## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## (ATLANTA DIVISION)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>MATTHEW E. WHITE,<br><br>RODNEY A. ZEHNER,<br><br>DANIEL J. MERANDI,<br><br>WHITE INVESTMENT GROUPS AND EQUITIES, LLC,<br><br>THE GRAND EMPIRE PALACE AND RESORT, LLC,<br><br>GEPR INVESTMENTS TRUST No. 1,<br><br>GEPR INVESTMENTS, LLC,<br><br>M&M FINANCIAL LLC, and<br><br>MOUNTAINEER DEVELOPMENT & CONSTRUCTION GROUP, LLC<br><br>　　　Defendants. | Civil Action Number<br>1:16-cv-_____<br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

Plaintiff United States Securities and Exchange Commission ("SEC")

alleges as follows:

## NATURE OF ACTION

1.      The SEC brings this action to stop an ongoing bond offering fraud by Defendants Matthew E. White, Rodney A. Zehner, Daniel J. Merandi, and several shell companies under their control.

2.      For nearly a decade, the defendants tried unsuccessfully to develop a resort and amusement park complex outside of Atlanta, Georgia called "Grand Empire Palace and Resorts."  In 2013, they attempted to fund the project by issuing $1 billion in corporate bonds.

3.      The defendants had significant difficulty selling the bonds, which were unrated and unsecured.  They never came close to obtaining the funding necessary for their real estate project.

4.      The defendants did, however, raise at least $5.6 million from investors.  The defendants were supposed to use these investor funds to buy a securities portfolio, which would collateralize the bonds.  But instead of using the proceeds to collateralize the bonds, as they were required to do, the defendants misappropriated the funds for their own personal use.

5.      Among other things, the defendants used investor money to fund lavish shopping sprees at Saks Fifth Avenue, Gucci, Louis Vuitton, Prada, Versace, and Republic of Couture.  The defendants also used investor funds to pay numerous personal expenses and provide gifts to family and friends.

6.     None of the $5.6 million raised from investors went to secure the bonds.

7.     The bonds expired in November 2015.  Nevertheless, the defendants continue to seek investors to purchase the bonds.

8.     The defendants are also currently engaged in a fraudulent scheme to artificially inflate the value of the bonds so that their brokerage firm will allow them to borrow against the bonds.

9.     The defendants, by virtue of their conduct, directly or indirectly, have engaged and, unless enjoined, will continue to engage in violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  The Commission seeks a temporary restraining order, preliminary and permanent injunctions, an accounting, disgorgement and pre-judgment interest, civil penalties, and an asset freeze as to each defendant.

## JURISDICTION AND VENUE

10.     The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v]  and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this complaint,

and transactions, acts, practices, and courses of business of similar purport and object, for civil penalties and for other equitable relief.

11.     This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and 28 U.S.C. § 1331.

12.     Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa], and 28 U.S.C. § 1391.  Defendants White and Zehner reside in this district.

13.     Defendants, directly and indirectly, made use of the mails, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

14.     Certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act and the Exchange Act occurred within the jurisdiction of the United States District Court for the Northern District of Georgia.

15.     Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged in this complaint, and in transactions, acts, practices, and courses of business of similar purport and object.

## DEFENDANTS

16.   **Matthew Eugene White ("White")**, age 53, is a resident of Atlanta, Georgia.  In or around 2005, he was a principal of Top Flight Development Group ("Top Flight").  In 2012, White became the President and/or CEO of The Grand Empire Palace and Resort, LLC ("Grand Empire, LLC").  White is also the CEO of White Investment Groups and Equities, LLC ("WIGEL").  He is a manager of M&M Financial, LLC ("M&M Financial").  White helped create GEPR Investments Trust No. 1. ("GEPR Trust"), and he serves as the CEO of GEPR Investments, LLC ("GEPR Investments").

17.   **Rodney Alan Zehner ("Zehner")**, age 49, is a resident of Atlanta, Georgia.  In or around 2005, he was a principal of Top Flight.  In 2012, Zehner helped create GEPR Trust and serves as its President and/or Executive Officer. Zehner also serves as the President of GEPR Investments.  In addition, he is a Vice President of WIGEL, and also a Vice President of Grand Empire.

18.   **Daniel Joseph Merandi ("Merandi")**, age 35, is a resident of Miami, Florida.  Since at least 2013, he has served as the Director of Emerging Capital Markets for Grand Empire.  Merandi is also the Chairman and CEO of M&M Financial, and the sole member of the company.  In addition, Merandi formed Mountaineer Development & Construction Group, LLC ("Mountaineer"), and is the sole member of the company.

19.    **GEPR Investments Trust No. 1.** is a Delaware statutory trust established in August 2012 by White and Zehner.  In March 2013, GEPR Trust issued $1 billion in corporate bonds (the "GEPR bonds").  The GEPR bonds are unsecured and unrated.  The activities of GEPR Trust are managed by its trust administrator, GEPR Investments.  White and Zehner control GEPR Investments.

20.    **GEPR Investments, LLC** is a Georgia limited liability company with its principal place of business in Atlanta, Georgia.  The company was originally formed as Grand Empire Investment, LLC in June 2007 by White.  In June 2012, White changed the name of the entity to GEPR Investments.  In July 2012, White added Zehner and another business associate as members of the company.  White is the CEO of GEPR Investments.  Zehner lists himself as the President of GEPR Investments.  GEPR Investments has no identifiable assets.  The company's sole business purpose is to act as the trust administrator for GEPR Trust.  As such, GEPR Investments controls all activities of GEPR Trust.

21.    **The Grand Empire Palace and Resort, LLC** is a Georgia limited liability company, with its principal place of business in Atlanta, Georgia.  White, along with several business partners, formed the company in November 2007.  Grand Empire was administratively dissolved in September 2010.  In March 2011, Grand Empire was reinstated with White as the sole member of the company.  White lists himself as the CEO and/or President of Grand Empire.  Zehner lists

himself as the company's Vice President.  Merandi holds himself out as Grand

Empire's Director of Emerging Capital Markets.  Grand Empire was the initial

purchaser of the GEPR bonds.  Grand Empire took possession of the GEPR bonds

in March 2013 by using a promissory note in the amount of $1 billion.  Grand

Empire never provided GEPR Trust with cash and/or escrowed securities as

payment for the GEPR bonds, however, as the company was required to do.

22.     **White Investment Groups and Equities, LLC** is a Georgia limited

liability corporation, with its principal place of business in Atlanta, Georgia.

White and Zehner formed WIGEL in September 2009.  White is the CEO of the

company.  Zehner is the company's Vice President.  WIGEL acquired the GEPR

bonds on June 1, 2014.

23.     **M&M Financial LLC** is a Florida limited liability corporation, with

its principal place of business in Miami, Florida.  Merandi is the Chairman and

CEO of M&M Financial, and the sole owner of the company.  In August 2014,

Merandi filed an amendment to the company's annual report listing White as an

additional manager of M&M Financial.  White has been listed as a manager and/or

secretary of the company ever since.

24.     **Mountaineer Development & Construction Group, LLC** is a

Delaware limited liability company, with its principal place of business in Miami,

Florida.  Merandi formed Mountaineer in June 2015.  Merandi is the sole member of the company.

## STATEMENT OF FACTS

### A.    The GEPR Trust Bond Offering

25.    In 2005, White and Zehner planned to create "Grand Empire Palace and Resorts."

26.    Grand Empire Palace and Resorts was a proposed $675 million resort and amusement park complex to be located outside of Atlanta, Georgia.

27.    White's and Zehner's design included a water park, conference center, 6,500-seat performing arts center, hotels, restaurants, and retail shops.

28.    Between 2005 and 2009, White and Zehner did not obtain the funding necessary for the Grand Empire Palace and Resorts project.

29.    In 2009, the planned site for the resort complex entered foreclosure.

30.    Following the 2009 foreclosure, White and Zehner began exploring alternative ways of funding the Grand Empire Palace and Resorts project.

31.    White and Zehner eventually settled on a structured financing scheme that involved the sale of corporate bonds.

32.    In 2012, White and Zehner formed GEPR Investments.

33.    In 2012, GEPR Investments then formed GEPR Trust for the purpose of issuing the bonds ("the GEPR bonds").

34.     On March 1, 2013, GEPR Trust (as issuer) and U.S. Bank National Association ("U.S. Bank") (as trustee) entered into a Trust Indenture.

35.     Zehner signed the Trust Indenture on behalf of GEPR Trust and GEPR Investments.

36.     GEPR Trust retained investment bank Stern Brothers & Company ("Stern Brothers") to create a private placement memorandum ("PPM") for its bond issuance.

37.     On March 12, 2013, Stern Brothers issued the PPM for the bonds to be issued by GEPR Trust.

38.     White, Zehner, and Merandi had the PPM and Trust Indenture created for GEPR Investments and/or GEPR Trust.

39.     The PPM and Trust Indenture provide that the proceeds generated from the sale of the GEPR bonds will go toward purchasing a securities portfolio.

40.     The securities portfolio would collateralize the GEPR bonds.

41.     The financing structure for the GEPR bonds depended upon raising $1 billion within 30 days of the issuance to create a securities portfolio that collateralized the bonds.

42.     Returns generated by the securities portfolio were supposed to be used to pay bondholders.

43.    Any remaining excess profits above the payments to bondholders were supposed to go toward funding the Grand Empire real estate project.

44.    In March 2013, GEPR Trust issued $1 billion (face value) of corporate bonds.

45.    On March 14, 2013, GEPR Trust sold the $1 billion of its bonds to Grand Empire, LLC in return for a promissory note.

46.    Matthew White signed the promissory note on behalf of Grand Empire, LLC.

47.    Rodney Zehner signed the promissory note on behalf of GEPR Investments.

48.    The GEPR bonds were not secured.

49.    There has never been collateral backing the GEPR bonds.

50.    The GEPR bonds have never been rated by Moody's, S&P, or any other comparable entity.

51.    White and Zehner have attempted to get the GEPR bonds rated by Moody's and/or S&P, but were unable to do so.

52.    Under the terms of the promissory note, Grand Empire, LLC had thirty business days to pay at least $953,846,154 is cash and/or escrowed securities for the GEPR bonds.

53.     The cash and/or escrowed securities were to be used to collateralize the GEPR bonds.

54.     Grand Empire, LLC did not deliver any cash or escrowed securities to GEPR Trust within 30 business days.

55.     From April 2013 until November 2014, Grand Empire, LLC and GEPR Trust executed five amendments to the Trust Indenture that extended the deadline for Grand Empire, LLC to deliver the cash and/or escrowed securities as payment for the GEPR bonds.

56.     White signed the five amendments to the Trust Indenture on behalf of Grand Empire, LLC.

57.     Zehner signed the five amendments to the Trust Indenture on behalf of GEPR Investments.

58.     The final deadline for Grand Empire, LLC to deliver payment for the GEPR bonds was November 15, 2015.

59.     Grand Empire, LLC did not deliver payment for the GEPR bonds by November 15, 2015.

60.     Grand Empire, LLC still has not delivered payment for the GEPR bonds.

61.     According to Section 2.07(m) of the Trust Indenture and subsequent amendments, if Grand Empire, LLC did not provide payment for the GEPR Bonds by November 15, 2015, the sale of the GEPR Bonds would be null and void.

62.     Grand Empire, LLC proposed a sixth amendment to the Trust Indenture that would extend the deadline beyond November 15, 2015.  U.S. Bank, as the Trustee, did not sign a sixth amendment to the Trust Indenture.

63.     GEPR Trust has not provided written notice to U.S. Bank that Grand Empire failed to deliver the required payment for the GEPR Bonds.

64.     Grand Empire, LLC has not instructed the Depository Trust Company ("DTC") to cancel Grand Empire, LLC's beneficial interest in the GEPR bonds as required by section 2.07(m) of the Trust Indenture.

65.     The GEPR bonds expired on November 15, 2015.

66.     The GEPR bonds have been null and void since November 15, 2015.

**B.     The Defendants Misappropriated Investor Funds**

67.     White and Zehner never came close to raising the $1 billion in funding that they originally sought and needed for their real estate project.

68.     White and Zehner did successfully obtain, with the assistance of Merandi, more than $5.6 million from various investors through sales of the GEPR bonds.

69.     White, Zehner, and Merandi did not use investor funds to establish a securities portfolio to collateralize the GEPR bonds.

70.     Instead, White, Zehner, and Merandi spent the proceeds on personal items, gifts to friends and family, and transfers to various business associates.

### 1. Western Canada Oil and Gas

71.     Western Canada Oil and Gas, Ltd. ("WCOG"), is a private energy company based in Alberta, Canada.

72.     In January 2013, WCOG signed a joint venture agreement with Grand Empire, LLC to create a company that would acquire interests in several oil and gas properties in the United States.

73.     At that time, WCOG extended a bridge loan to Grand Empire, LLC to assist Grand Empire, LLC in paying the closing fees associated with bringing their bonds to market.

74.     WCOG also obtained a copy of the PPM and several other operating documents from Grand Empire, all of which laid out the financing structure for the GEPR bonds.

75.     In addition to the bridge loan, in August 2013, WCOG wired $250,000 to Grand Empire, LLC to purchase GEPR bonds at par (i.e., at face value).

76.     White told WCOG management that the proceeds received from their bond purchase would be used to acquire securities in accordance with the controlling documents (specifically, the PPM and the Trust Indenture).

77.     WCOG did not receive the $250,000 in GEPR bonds.

78.     Grand Empire, LLC did not use WCOG's money to purchase securities.

### 2. Lutel Primus

79.     Lutel Primus, LLC ("Lutel") is a California-based company formed in April 2013 for the purpose of raising capital to invest in real estate.

80.     On September 16, 2013, Lutel entered into an agreement with Grand Empire, LLC to purchase $1 million (face value) of GEPR bonds in exchange for $400,000 cash.

81.     According to the terms of the agreement, Grand Empire, LLC was to buy back the bonds at face value for $1 million within 10 business days.

82.     After the initial transaction concluded, the agreement gave Lutel the option of purchasing an additional $2.5 million in bonds for only $1 million. Grand Empire, LLC committed again to repurchase those bonds within 10 business days at face value.

83.     In order to induce Lutel to purchase the GEPR bonds, White made several misrepresentations to the company.

84.     The agreement between Lutel and Grand Empire, LLC was signed by White and falsely stated that the GEPR bonds were "investment grade."

85.     White also falsely stated that the GEPR bonds had been rated investment grade by Moody's.

86.     White falsely stated that the bonds had "real" value in the open market.

87.     Finally, the Lutel principals received the PPM, which falsely indicated that the bonds would be secured by a sound securities portfolio.

88.     On September 17, 2013, Lutel wired $400,000 to Grand Empire, LLC's TD Ameritrade account.

89.     Grand Empire, LLC only provided Lutel with $800,000 (face value) of GEPR bonds, instead of the $1 million in GEPR bonds that were stated in the agreement.

90.     The defendants did not use the $400,000 from Lutel to secure the GEPR bonds.

### 3. White and Zehner Misappropriated WCOG's and Lutel's Funds

91.     White and Zehner did not use any of the $650,000 received from WCOG and Lutel to secure the GEPR bonds through the purchase of investment-grade securities.

92.    White and Zehner instead used the funds for their own personal benefit.

93.    White and Zehner wired WCOG's money through several different accounts before eventually transferring the funds to a Bank of America account that designated White and Zehner as the owners.

94.    White and Zehner began wiring Lutel's money to the same Bank of America account shortly after receiving those funds.

95.    Once White and Zehner moved the proceeds from WCOG and Lutel into the Bank of America account, they used the funds to purchase a variety of personal goods and services.

96.    These purchases included trips to luxury stores such as Saks Fifth Avenue, Gucci, Louis Vuitton, Prada, Versace, and Republic of Couture.

97.    White and Zehner also made cash withdrawals from the account.

### 4. Sales Through Daniel Merandi and M&M Financial

98.    On March 25, 2014, Zehner transferred $10 million (face value) in GEPR bonds into M&M Financial's Fidelity brokerage account.

99.    Merandi controlled M&M Financial's Fidelity brokerage account.

100.   On May 12, 2014, Advantage Solutions Limited paid M&M Financial $1.5 million in exchange for $3 million (face value) of GEPR bonds.

101.   Advantage Solutions Limited purchased the bonds through a foreign securities account managed by Rothschild Bank AG in Zurich, Switzerland.

102.   On May 20, 2014, Advantage Solutions Limited purchased an additional $7 million (face value) of GEPR bonds from M&M Financial for $3.5 million.

103.   In total, Advantage Solutions paid M&M Financial $5 million for $10 million (face value) of GEPR bonds.

104.   Merandi did not use the $5 million from Advantage Solutions to secure the GEPR bonds.

105.   Merandi instead gave the money to various business associates – including White and Zehner – and transferred the rest to other bank and brokerage accounts that he controlled.

106.   Merandi transferred approximately $1.4 million in cash to M&M Financial's commercial bank account at BB&T.

107.   Merandi disbursed the money in the BB&T account to other accounts and spent the remainder on personal goods and services.

108.   These expenditures included outings to night clubs and personal trips where Merandi stayed in five-star accommodations (like the Greenbrier resort).

109.   Merandi also gave thousands of dollars to friends and family.

110.   Merandi used approximately $1 million of the proceeds to engage in day trading in a TD Ameritrade account.

111.   Merandi lost more than $637,000 over a 24-month period in the TD Ameritrade account.

112.   Merandi transferred an additional $1.5 million to business associates.

113.   White and Zehner also received $940,000 from the Advantage Solutions transactions.

114.   Merandi sent $940,000 to Grand Empire, LLC's Bank of America account.

115.   White and Zehner did not use any of the funds from Advantage Solutions to secure the GEPR bonds.

116.   White and Zehner spent the money received from Advantage Solutions.

117.   White, for example, spent $60,000 at a Mercedes dealership in Atlanta, Georgia.

118.   White and Zehner also made cash withdrawals from the Bank of America account.

119.   White and Zehner also transferred the funds into other accounts.

### C.     The Bonds Expired in November of 2015, But the Defendants Have Failed to Cancel Them as Required by the Trust Indenture

120.   The Trust Indenture requires Grand Empire, LLC to provide $1 billion in cash or escrowed securities to GEPR Trust within 30 days of the initial issuance.

121.   The Trust Indenture states that, in the event that payment is not received within the allotted timeframe, GEPR Trust must cause Grand Empire, LLC to surrender its notes for cancellation and notify DTC of the cancellation of the bonds.

122.   White and Zehner have amended the Trust Indenture five times in order to extend the date required for repayment.

123.   The most recent amendment required payment by November 15, 2015.  The parties have not signed any subsequent amendment to the Trust Indenture.

124.   Grand Empire, LLC has not delivered the required securities or cash as payment for the GEPR bonds.

125.   The GEPR bonds expired on November 15, 2015.

126.   The GEPR bonds are now, under the terms of the offering documents, null and void.

127.   After November 15, 2015, the defendants continued trying to sell the GEPR bonds.

128.   As of the date of this filing, the defendants are still trying to sell the GEPR bonds.

**D.    The Defendants' Recent Attempts to Artificially Inflate the Value of Their Bonds**

129.   In December 2015, White and Zehner opened a new brokerage account in the name of WIGEL at NMS Capital ("NMS") in Beverly Hills, California.

130.   WIGEL is a shell company controlled by White and Zehner.

131.   Shortly after opening the account at NMS, White and Zehner transferred approximately $600 million (face value) of GEPR bonds from their brokerage account at Interactive Brokers.

132.   Upon transferring the GEPR bonds, White and Zehner attempted to borrow against them in order to buy additional securities for their NMS account.

133.   NMS denied White's and Zehner's request to borrow against the GEPR bonds.

134.   At the time the GEPR bonds entered White's and Zehner's NMS account, the bonds did not have a price.  This meant that, according to NMS's system, the bonds did not have a value.

135.   In February 2016, WIGEL arranged the sale of $10,000 (face value) of GEPR bonds at par to Mountaineer.

136. This trade was subsequently recorded in FINRA's Trade Reporting and Compliance Engine ("TRACE"), which caused the value of the GEPR bonds in WIGEL's NMS brokerage account to balloon to approximately $560 million.

137. NMS specifically asked Zehner about the relationship between WIGEL and Mountaineer before authorizing the trade.

138. Zehner falsely stated that the two entities were not directly related.

139. In truth, Mountaineer is 100% owned by White and Zehner's business associate, Merandi.

140. Merandi started Mountaineer in June 2015.

141. The Mountaineer transaction created a price for the GEPR bonds.

142. Once the GEPR bonds were priced, NMS allowed WIGEL to borrow approximately $60,000 on margin.

143. White and Zehner used the margin funds to purchase United States Treasury bonds.

144. Executing a trade that was reported through TRACE also allows the defendants to show potential buyers the artificial price of the GEPR bonds.

## COUNT I – FRAUD

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

### (All Defendants)

145. Paragraphs 1 through 144 are incorporated herein by reference.

146.   Between in or around 2013 and the present, the defendants, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

147.   The defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud.

148.   While engaging in the course of conduct described above, the defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

149.   By reason of the foregoing, the defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II – FRAUD

**Violations of Section 17(a)(2) of the Securities Act**
**[15 U.S.C. §§ 77q(a)(2)]**

**(Defendants White, Zehner, Grand Empire, LLC, and WIGEL)**

150.   Paragraphs 1 through 144 are incorporated herein by reference.

151.   Between in or around 2013 and the present, defendants in the offer and sale of the securities described herein, by use of means and instruments of

transportation and communication in interstate commerce and by use of the mails, directly and indirectly obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

152.   By reason of the foregoing, the defendants directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III – FRAUD

### Violations of Section 17(a)(3) of the Securities Act
### [15 U.S.C. § 77q(a)(3)]

### (All Defendants)

153.   Paragraphs 1 through 144 are incorporated herein by reference.

154.   Between in or around 2013 and the present, the defendants, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

155.   By reason of the foregoing, the defendants directly and indirectly have violated and, unless enjoined, will continue to violate Sections 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV – FRAUD

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]and Sections (a) and (c) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5 (a) and (c)]

**(All Defendants)**

156.   Paragraphs 1 through 144 are incorporated herein by reference.

157.   Between in or around 2013 and the present, the defendants, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:  (i) employed devices, schemes, and artifices to defraud, and (ii) engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities; all as more particularly described above.

158.   The defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, the defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

159.   By reason of the foregoing, the defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Sections (a) and (c) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

### COUNT V – FRAUD

**Violations of Section 10(b) of the Exchange Act**
**[15 U.S.C. § 78j(b)]and Section (b) of Rule 10b-5**
**thereunder [17 C.F.R. § 240.10b-5(b)]**

**(Defendants White, Zehner, Grand Empire, LLC, and WIGEL)**

160.   Paragraphs 1 through 144 are hereby re-alleged and are incorporated herein by reference.

161.   Between in or around 2013 and the present, the defendants, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; all as more particularly described above.

162.   The defendants knowingly, intentionally, and/or recklessly made untrue statements of material facts and omitted to state material facts.  In engaging in such

conduct, the defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

163.   By reason of the foregoing, the defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Section (b) of Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5(b)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully prays for:

### I.

An order finding the defendants liable for committing the violations charged in this complaint.

### II.

A temporary restraining order, preliminary and permanent injunctions enjoining Defendants, their officers, agents, servants, employees, and attorneys from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5] and Section 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q].

**III.**

An order requiring an accounting by the defendants to: (i) identify the present location of all GEPR bonds; (ii) identify all sales or transfers of the GEPR bonds; (iii) provide the present location of proceeds from all such sales or transfers of GEPR Bonds, or if those proceeds have been spent, identify when and where the proceeds were spent; and (iv) identify all of their assets.

**IV.**

An order pursuant to, among other things, Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] imposing civil penalties against Defendants.

**V.**

An order freezing the assets of defendants pending further order of the Court.

**VI.**

An order requiring disgorgement by the defendants of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws.

**VII.**

An order preventing defendants from destroying or concealing documents until further order of this Court.

## VIII.

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

## **JURY TRIAL DEMAND**

The SEC demands a trial by jury as to all issues that may be so tried.


Dated: July 27, 2016        Respectfully submitted,

/s/ Harry B. Roback
M. Graham Loomis (GA Bar No. 457868)
Harry B. Roback (GA Bar No. 706790)
Debbie T. Hampton (GA Bar No. 707681)
Anthony J. Winter (GA Bar No. 085108)
U.S. Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel:(404) 942-0690
Facsimile:  (404) 842-7679
RobackH@sec.gov

Attorneys for Plaintiff

## <u>CERTIFICATION OF COMPLIANCE</u>

This is to certify that the foregoing was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 (B).

<u>/s/ Harry B. Roback</u>
Harry B. Roback